UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PROGRESSIVE HEALTH AND
REHAB CORP., individually and
as the representative of a class of
similarly-situated persons,

Case No. 2:16-cv-1151
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

Plaintiff,

v.

STRATEGY ANESTHESIA, LLC,
and John Does 1–5,

Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration on Defendant's Motion to Dismiss [the Amended Complaint] for Lack of Standing, or Alternatively, to Strike Class Allegations. (ECF No. 23.) Also before the Court are Defendant's Motion to Dismiss the original complaint (ECF No. 14) and Plaintiff's First Amended "Placeholder" Motion for Class Certification (ECF No. 19). For the following reasons, Defendants' Motion to Dismiss (ECF No. 23) is **DENIED**, Defendant's Motion to Dismiss (ECF No. 14) is **MOOT**, and Plaintiff's placeholder Motion for Class Certification (ECF No. 19) is **DENIED without prejudice**.

## I. BACKGROUND

This lawsuit arises out of allegedly unsolicited faxes sent by Defendants, Strategy Anesthesia, LLC and John Does 1–5 ("Strategy" or collectively "Defendants"), to Plaintiff Progressive Health and Rehab Corp. ("Progressive"). Progressive alleges Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), when Defendants sent advertising faxes without sufficient opt-

out notices and without prior express invitation or permission by the recipients. Plaintiff seeks statutory liquidated damages for each TCPA violation as well as injunctive relief.

Plaintiff alleges that on both June 10, 2015 and August 12, 2015 it received an unsolicited one-page facsimile advertising the Defendant's anesthesia services. (Amended Complaint ("Am. Compl.") ¶ 11, ECF No. 18.) While the two faxes did allow Plaintiff to contact Defendant to no longer receive such advertisements, Plaintiff alleges that the faxes did not contain the particular opt-out language required by the JFPA. (*Id.* ¶ 27; 47 U.S.C. § 227(b)(1)(C)(iii).) Plaintiff attaches a copy of each fax message as Exhibit A to the Amended Complaint. (Ex. A, ECF No. 18-1.) Plaintiff further alleges that Defendants faxed the same and other unsolicited facsimiles without the required opt-out language to at least forty other recipients. (Am. Compl. ¶ 14.) As a result of the unsolicited faxes, Plaintiff alleges it suffered loss of the use of its fax machine, paper, and in toner. (*Id.* ¶ 3.) Unsolicited faxes also waste a recipient's valuable time, causes undue wear and tear on the recipient's fax machine, and interrupts the recipient's privacy, according to the Plaintiff. (*Id.*)

Plaintiff initiated this class action on December 7, 2016, and on February 7, 2017 Defendant filed its first Motion to Dismiss the Complaint for lack of standing (ECF No. 14). On February 27, 2017, Plaintiff filed the Amended Complaint as well as a First Amended "Placeholder" Motion for Class Certification. (Placeholder Motion for Class Certification ("Mot. for Class Cert."), ECF No. 19). Plaintiff seeks to bring this action on behalf of the following class of persons:

> All persons who (1) from October 24, 2014 to present, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, and (4) with whom Defendants did not have an established business relationship, and/or (5) which did not display a proper opt-out notice.

2

(Am. Compl. ¶ 17.)

On March 20, 2017, Defendant filed a renewed Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiff lacks standing because it has not alleged a concrete injury-in-fact. (Defendant's Motion to Dismiss ("Mot. to Dismiss"), ECF No. 23.) Plaintiff has filed a Memorandum in Opposition to Defendant's motion (ECF No. 26), and Defendant has filed a Reply in Support (ECF No. 35). These matters are now ripe for review.

## II. STANDING

Defendant seeks dismissal of Plaintiff's Amended Complaint (ECF No. 18) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff lacks standing because it has failed to articulate more than a de minimis injury-in-fact.

### A. Standard

Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject matter jurisdiction. Generally, Rule 12(b)(1) motions fall into two general categories: facial attacks and factual attacks. *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974). In contrast, a factual attack is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *See United States v. Ritchie*, 15 F.3d 592,

3

598 (6th Cir. 1994).

Defendant also challenges the sufficiency of Plaintiff's pleading with respect to standing under Rule 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

Standing is "the threshold question in every federal case," and if the plaintiff lacks standing, the federal court lacks jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* Standing under Article III has three elements. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Second, the injury must be "fairly traceable to the challenged action of the defendant." *Id.* Third, it must be likely that the injury will be "redressed by a favorable decision." *Id.* at 561. The burden is on the party invoking federal jurisdiction to demonstrate Article III standing. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). At the pleading stage, the plaintiff must "'clearly . . . allege facts demonstrating' each element" required to establish standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

4

Defendant here challenges Plaintiff's standing on the first element of standing requiring an injury in fact. For an injury to be cognizable under current standing doctrine, it must be particularized meaning it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Additionally, the injury must be concrete, meaning it must actually exist and must be real and not abstract. *Id.* at 1548 (quoting Webster's Third New Int'l Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)). However, the injury need not necessarily be tangible. *Id.* at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)). Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 578). However, this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Specifically, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549.

**B. Discussion**

Applying these standards and viewing the facts alleged in Plaintiff's Complaint as true, the Court concludes that Plaintiff has established the material elements of standing.

The TCPA/JFPA "prohibits the use of 'any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement,' unless the sender and recipient have 'an established business relationship,' the recipient voluntarily made its fax number available, and the unsolicited fax contains a notice meeting certain statutory and regulatory requirements." *Bridging Cmtys., Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1122 (6th

5

Cir. Dec. 15, 2016) (quoting 47 U.S.C. § 227(b)(1)(C), (b)(2)(D); 47 C.F.R. § 64.1200(a)(4)). The statute creates a private right of action for a plaintiff to enjoin a JFPA violation and/or recover money lost as a result of the violation or $500 per violation, whichever is greater. *Id.* (citing 47 U.S.C. § 227(b)(3)). Treble damages are available if the JFPA violation was willful or knowing. *Id.* Here, Plaintiff alleges that the unsolicited faxes damaged their recipients:

> The Defendants' actions caused damages to the Plaintiff and the other class members. Receiving the Defendants' junk faxes caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of the Defendants' faxes. Moreover, the Defendants' faxes used the Plaintiff's and the other class members' telephone lines and fax machine. The Defendants' faxes cost the Plaintiff and the other class members time, as the Plaintiff and the other class members and their employees wasted their time receiving, reviewing and routing the Defendants' unauthorized faxes. That time otherwise would have been spent on the Plaintiff's and the other class members' business activities. The Defendants' faxes unlawfully interrupted the Plaintiff's and other class members' privacy interests in being left alone.

(Am. Compl. ¶ 34.)

Defendants maintain that Plaintiff's alleged harm constitutes no more than a mere statutory violation. (Mot. to Dismiss at 6.) In support, Defendants rely on the relatively recent Supreme Court decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1548 (2016), in which the Supreme Court addressed the "concrete injury" requirement under Article III standing as applied to a plaintiff seeking statutory damages under the Fair Credit Reporting Act ("FCRA"). In *Spokeo*, the plaintiff alleged that the defendant, Spokeo, had included false information about him in a consumer report and thus violated the FCRA by failing to "follow reasonable procedures to assure the maximum possible accuracy" of the consumer report. *Id.* at 1542. The Ninth Circuit held that the plaintiff had sufficiently alleged an injury-in-fact in the violation of his statutory rights because "personal interests in the handling of his credit information are individualized rather than collective." *Id.* at 1546. The United States Supreme Court did not

6

disagree with the Ninth Circuit's conclusion, but remanded the case because the Ninth Circuit had not completed its analysis by considering whether plaintiff had shown whether he had suffered an injury that was "concrete." *Id.* at 1548 ("Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be "concrete."). The Supreme Court noted that such a showing was required because "a violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1549.

Defendants read *Spokeo* to require more than a mere statutory violation to state an injury-in-fact, and that the two alleged unsolicited faxes only demonstrate a violation of the TCPA, not actual harm. While true the Supreme Court in *Spokeo* "clarified the meaning of a concrete injury . . . it did not fundamentally change the doctrine of standing or jurisdiction." *See LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1142 (D.N.M. 2016). The Court emphasized that an injury-in-fact must be both particularized and concrete, even in the context of a statutory violation. While "particularization" is the requirement that an injury "affect the plaintiff in a personal and individual way," "concreteness" is "quite different" and requires an injury to actually exist. *Id.* at 1548.

According to Plaintiff, the Sixth Circuit's decision in *Imhoff Investment v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015), decided prior to *Spokeo*, is more relevant and controlling. In *Imhoff*, the Sixth Circuit held that the TCPA was a statute that "confers new legal rights on a person, [and] that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created rights." *Id.* at 633 (quoting *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015)). The Sixth Circuit recognized that, through the TCPA, Congress intended to "remedy a number of problems associated with junk faxes,

including the cost of paper and ink, the difficulty of the recipient's telephone line being tied up, and the stress on switchboard systems." *Id.* (citing *Am. Copper*, 757 F.3d 540 (6th Cir. 2014). The Sixth Circuit reasoned that a plaintiff need not view or print a fax advertisement to "to suffer a violation of the statutorily-created right to have one's phone line and fax machine free of the transmission of unsolicited advertisements." *Id.* Accordingly, Plaintiff maintains that it has alleged a sufficient injury-in-fact under *Imhoff*.

Defendants contend that *Imhoff* is no longer valid since it was decided prior to *Spokeo*. However, two district courts in the Sixth Circuit, including this district, have since had the opportunity to analyze *Imhoff* in light of *Spokeo*. *See Compressor Eng'g Corp. v. Thomas*, 319 F.R.D. 511, (E.D. Mich. 2016); *Swetlic Chiropractic & Rehab. Ctr., Inc. v. Foot Levelers, Inc.*, 235 F. Supp. 3d 882, 889 (S.D. Ohio 2017) (J. Smith). Indeed, as Plaintiff points out, the overwhelming number of courts that have addressed standing in a TCPA case subsequent to *Spokeo* have found standing. (Plaintiff's Memorandum in Opposition to Mot. to Dismiss ("Pl. Mem. in Opp.") at 9–10, ECF No. 26 (citing various district court decisions).)

In *Compressor*, the plaintiff received a single fax from the defendant, did not recall receiving the fax, did not keep the fax, did not keep the fax machine, and did not have the transmission log showing receipt of the fax. *Compressor*, 319 F.R.D. at 517–18. It was undisputed that the defendant did not receive permission to send the fax. *Id.* Finding *Imhoff* consistent with *Spokeo*, the court held that the plaintiff had standing because he "evidenced a 'concrete' injury of an 'occupied' fax or telephone line that is not merely a 'procedural harm divorced' from a concrete injury," and that "the injury is 'particularized' as to Plaintiff and the proposed class because they are alleged 'recipients' of the offending fax advertisement." *Id.* at 524, 2016 WL 7473448, at *10.

Similarly in *Swetlic*, the defendants sent three fax advertisements to the named plaintiff and approximately twenty-five other recipients without sufficient opt-out notices or without prior express permission. The plaintiff there alleged that the faxes caused damages including the loss of paper, toner, and the use of fax machine lines, in addition to the time lost receiving, reviewing, and routing the unauthorized faxes. *Id.* at 885. As in this case, the defendants in *Swetlic* challenged plaintiff's standing on the grounds that the alleged injuries suffered were vague and de minimis such that they were not concrete. The court disagreed, and instead concurred with the Eastern District of Michigan in *Compressor* in finding that *Imhoff* was consistent with *Spokeo*. The Court thus concluded that the plaintiff had alleged a sufficiently particularized and concrete injury-in-fact to establish standing. *See also Whiteamire Clinic, P.A., Inc. v. Cartridge World N. Am.*, LLC, 2017 WL 561832, at *3 (N.D. Ohio Feb. 13, 2017) (finding sufficient injury-in-fact due to waste of time spent reviewing junk emails despite no loss of paper or toner because faxes had been converted to email).

Defendants here acknowledge that the facts in *Swetlic* closely resembled those in the case at bar, but nevertheless argue that the decision "fails to appreciate the effect of *Spokeo* on cases such as the present one." (Mot. to Dismiss at 10.) They criticize the Court's observation that unsolicited faxes "impede the flow of commerce" as merely stating a general harm rather than a particularized one. They argue instead that the case of *Sorbents, LLC v. Ring Central, Inc.*, 4:16-cv-2113, 2016 WL 5870111 (N.D. Cal. Oct. 7, 2016) is more relevant to the instant case. There, the district court found that the plaintiff failed to sufficiently plead an injury-in-fact based on the receipt of an unsolicited fax advertisement. However, the plaintiff there had framed its alleged harm in the abstract, stating generally that "[a]n unsolicited fax wastes the recipient's valuable time that would have been spent on something else, A junk fax interrupts the recipient's privacy.

9

. . ." *Id.* at *3. The Court held that the plaintiff failed to allege how it specifically suffered from these particular harms. Here, in contrast, Plaintiff specifically alleged that it and other class members suffered these particular harms as a result of receiving Defendants' unsolicited faxes. (Am. Compl. ¶ 34.)

Defendants additionally argue that even if Plaintiff suffered some harm by receiving the two unsolicited faxes, any such harm was de minimis. (Mot. to Dismiss at 7 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course a de minimis level of imposition with which the Constitution is not concerned.")).) Yet, the Sixth Circuit has affirmed that the alleged harm Plaintiff asserts is a legitimate loss, as it has clarified that "unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce." *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, 757 F.3d 540, 544 (6th Cir. 2014) (citing *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Even a recipient who gets the fax on a computer and deletes it without printing suffers some loss: the value of the time necessary to realize that the inbox has been cluttered by junk.")). *Am. Copper* is clear that unsolicited fax advertisements waste time and impede commerce. *Id.*

Thus, this Court agrees with the *Sweltic* and *Compressor* court that the receipt of an impermissible fax constitutes a concrete and particularized injury under *Imhoff* and *Spokeo*. At this stage, the Court finds that Plaintiff has alleged a sufficient injury-in-fact to have standing to bring its TCPA claim.

### C. Motion to Strike Class Allegations

Defendant alternatively asks the Court to strike Plaintiff's class allegations pursuant to Rule 12(f) because the even if Plaintiff has established a concrete injury for purposes of standing,

the alleged injuries of the putative class are too individualized to be determined on a classwide basis. F. R. Civ. P. 12(f). Defendants also assert that the majority of transmissions today are received via computer, not on paper and toner machines.

As Plaintiff argues, *Spokeo* does not require that each potential class member establish an injury-in-fact to satisfy Article III standing where the named plaintiff has already has standing. The Sixth Circuit has held that "[o]nce [the named plaintiff's] standing is established, whether [plaintiff] will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in [Rule 23]." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422–23 (6th Cir. 1998); *see also Smith v. Sterling Infosystems-Ohio, Inc.*, 2016 WL 6092551, at *2–3 (N.D. Ohio Oct. 19, 2016) (denying post-Spokeo motion to strike class allegations that mistakenly assumed putative class members had to satisfy Article III); *Underwood v. Carpenters Pension Trust Fund-Detroit & Vicinity*, 2014 WL 4602974, *3 (E.D. Mich. 2014) (Article III standing "need not be established for class members who are not the named plaintiff"); *Lee v. City of Columbus*, 644 F. Supp. 2d 1000, 1007 (S.D. Ohio 2009) (holding "only one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class"). Accordingly, Defendant's motion to strike the class allegations is denied.

### III. PLAINTIFF'S "PLACEHOLDER" MOTION FOR CLASS CERTIFICATION

Plaintiff has also filed a "placeholder" motion for class certification to prevent the Defendants from pursuing a buy-off attempt by offering full relief to the named plaintiff only. (Plaintiff's Placeholder Motion for Class Certification ("Placeholder Mot. for Class Cert."), ECF No. 19.) Defendants argue that Plaintiff's motion does not meet the requirements of a Rule 23 Motion, stating that they would respond more fully once a proper Rule 23 motion is filed. (ECF

No. 22.) The parties agreed at the initial pretrial conference that the motion for class certification would be filed by April 2, 2018. (ECF No. 24.)

Courts typically dismiss "placeholder" motion for class certification as premature. *See Mey v. N. Am. Bancard, LLC*, 2014 WL 6686773 at * 2 (E.D. Mich. 2014); *Beaudry v. Telecheck Svs., Inc.*, 2010 WL 2901781 at *2 (M.D. Tenn. 2010); and, *Minniti v. Eilers*, 302 F.R.D. 655 (S.D. Fla. 2014). A court need not hold in abeyance a class certification motion which the plaintiff intentionally filed prematurely. *Wasvary v. WB Holdings, LLC*, No. 15-10750, 2015 WL 5161370, at *3 (E.D. Mich. Sept. 2, 2015).

Plaintiff nevertheless files this motion "out of an abundance of caution" to protect against any alternative pick-off attempt in light of the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) (holding that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case"). (Placeholder Mot. for Class Cert. at 2.) Plaintiff acknowledges, however, that after *Campbell-Ewald* other attempts to pick off a named plaintiff's claims, besides an offer of judgment, have proved unsuccessful. Indeed, courts have since recognized that "the pick-off route is effectively closed to class defendants in the Sixth Circuit, regardless of what mechanism they employ to attempt to 'moot' the plaintiff's claim." *See Compressor Eng'g Corp. v. Comfort Control Supply Co.*, Inc., No. 16-11726, 2016 WL 4502467, at *1 (E.D. Mich. Aug. 29, 2016) (citing *Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016) (finding "no distinction between picking off a named plaintiff when a motion for class certification has been filed and is then pending and picking off a named plaintiff after the motion for class certification has been denied").)

Accordingly, Plaintiff's Placeholder Motion for Class Certification is denied without prejudice, subject to the expected filing of Plaintiff's forthcoming motion for class certification.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 23) is **DENIED**. Accordingly, Defendant's Motion to Dismiss the original Complaint ("ECF No. 14) is **MOOT**. Plaintiff's First Amended "Placeholder" Motion for Class Certification (ECF No. 19) is also **DENIED without prejudice.**

**IT IS SO ORDERED.**

\_\_\_9-25-2017\_\_\_
**DATE**

_____
**EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE**